UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MJW INVESTMENTS, INC, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>SENTRYWEST INSURANCE SERVICES, INC., a Utah Corporation, MICHAEL HASLAM, an individual,<br><br>Defendants and Third-Party Plaintiffs<br><br>v.<br><br>SWISS RE CORPORATE SOLUTIONS CAPACITY INSURANCE CORPORATION, a Missouri Corporation, and CRC INSURANCE SERVICES, LLC, a Delaware Limited Liability Company; ROES 1-10, inclusive.<br><br>Third-Party Defendants | **MEMORANDUM DECISION AND ORDER GRANTING [ECF NO. 49] THIRD PARTY DEFENDANT'S MOTION TO DISMISS THIRD-PARTY COMPLAINT**<br><br>Case No. 2:24-cv-00704<br><br>District Judge David Barlow |

Before the court is Third-Party Defendant CRC Insurance Services, LLC's ("CRC") Motion to Dismiss Third-Party Complaint,[1] Third-Party Plaintiffs SentryWest Insurance Services, Inc and Michael Haslam's (Collectively, "SentryWest") response brief,[2] and CRC's

---

[1] Mot. to Dismiss Third-Party Compl. ("MTD"), ECF No. 49, filed April 10, 2025.
[2] Third-Party Plaintiffs SentryWest Insurance Services LLC and Michael Haslam's Opp'n to Mot. to Dismiss Third-Party Compl. ("Opp."), ECF No. 63, filed September 12, 2025.

1

reply.[3] CRC is an insurance broker that SentryWest engaged to help obtain insurance coverage for Plaintiff MJW Investments, Inc ("MJW"). After MJW brought a claim against SentryWest,[4] SentryWest brought a third-party equitable indemnity and contribution claim against CRC and Swiss Re Corporate Solutions Capacity Insurance Corporation.[5] CRC moves to dismiss that claim under the economic loss rule. Having reviewed the briefing and the case law, the court finds that oral argument is not necessary.[6]

## BACKGROUND

MJW is a California company that owns and manages residential property in several states, including California and Utah.[7] MJW sought insurance for its properties and affiliated entities and contacted SentryWest to help obtain it.[8] SentryWest in turn contacted CRC.[9] CRC helped broker an insurance "master policy" with Swiss Re Corporate Solutions Capacity Insurance Corporation's predecessor, North American Capacity Insurance Company ("NACIC").[10] MJW and SentryWest provided a schedule of the entities and properties that should be covered under the policy.[11]

CRC assured SentryWest, who in turn assured MJW, that MJW and all related entities and properties included in the schedule would be Named Insureds under the policy.[12]

---

[3] Reply in Supp. of Mot. to Dismiss Third-Party Compl. ("Reply"), ECF No. 71, filed October 9, 2025.
[4] Am. Compl., ECF No. 12, filed October 8, 2024.
[5] Third-Party Compl., ECF No. 19, filed December 20, 2024.
[6] *See* DUCivR 7-1(g).
[7] Third-Party Compl. ¶ 14.
[8] *Id.* ¶ 14.
[9] *Id.* ¶¶ 15–18.
[10] *Id.* ¶ 16.
[11] *Id.* ¶¶ 16–17, 21.
[12] *Id.* ¶¶ 17–18, 21, 23.

2

After the policy was issued, MJW was sued four times for damages allegedly sustained on various properties in California.[13] But NACIC denied MJW coverage, contending that the policy did not cover MJW or its affiliated entities.[14]

MJW brought this action against SentryWest for breach of oral contract, negligence, and breach of fiduciary duty, all arising from MJW's denied coverage.[15] In the third-party complaint, SentryWest alleges that CRC and NACIC are responsible for the damages to MJW, and thus "[b]y reason of Third-Party Defendants' active and primary negligence or fault, Third-Party Plaintiffs are entitled to be indemnified and held harmless from any judgment against Third-Party Plaintiffs."[16]

CRC responds that CRC's relationship with SentryWest is governed by a contract signed with CRC's predecessor-in-interest.[17] This "Broker Agreement" contains a hold harmless provision that states:

> The Broker [SentryWest] agrees to hold [CRC] harmless from any demand or claim advanced against [CRC] based upon or arising out of any act, error or omission of the Broker, its agents, representatives or employees. [CRC] agrees to hold Broker harmless from any demand or claim advanced against Broker based upon or arising out of any act, error or omission of [CRC].[18]

## STANDARD

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

---

[13] *Id.* ¶ 24.
[14] *Id.* ¶ 25.
[15] *Id.* ¶¶ 1–2.
[16] *Id.* ¶ 31.
[17] MTD 3–4, Ex. A.
[18] MTD Ex. A at 3.

sufficient to state a claim for which relief may be granted."[19] Thus, to survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[20] A claim 'has facial plausibility' if the plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[21] At the motion to dismiss stage, a court must accept as true all well-pleaded facts and construe the fact allegations in the light most favorable to the plaintiff.[22] But "[t]he court does not accept as true legal conclusions that are couched as factual allegations,"[23] as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[24]

## DISCUSSION

The court first considers whether California or Utah law governs this claim and then considers whether the economic loss rule bars SentryWest's claim.

### I. Choice of Law

In diversity jurisdiction cases like this one, federal courts follow the choice of law of the state in which they sit.[25] In Utah, the first step is to determine the nature of the claim–whether it sounds in tort, contract, property, or some other area.[26] Here, the parties agree that SentryWest's equitable indemnity and contribution claim involves an alleged tort.[27]

---

[19] *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).
[20] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[21] *VDARE Found. v. Colorado Springs*, 11 F.4th 1151, 1158–59 (10th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678).
[22] *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014).
[23] *Murphey v. Mid-Century Ins. Co.*, No. 13-2598, 2014 WL 2619073, at *7 (D. Kan. June 12, 2014) (citing *Ashcroft*, 556 U.S. at 678).
[24] *Ashcroft*, 556 U.S. at 678.
[25] *Oklahoma. Elec. Distrib. Inc. v. SFR, Inc.*, 166 F.3d 1074, 1083 (10th Cir. 1999) (When "making a choice of law determination, a federal court sitting in diversity must apply the choice of law of the forum state in which it is sitting.").
[26] *Waddoups v. Amalgamated Sugar Co.*, 2002 UT 69, ¶ 15.
[27] Opp. 6; Reply 4.

Next, the court must determine "which state 'has the most significant relationship to the occurrence and the parties.'"[28] For torts, the court considers "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered."[29]

CRC argues that the choice of law analysis should focus on SentryWest's liability and the relationship between CRC and SentryWest.[30] But the "occurrence" at issue here is CRC's alleged negligence, not SentryWest's potential liability.[31] And CRC's alleged negligence was its failure to properly secure MJW's insurance policy.

Approached from the angle of CRC's alleged negligence, California law applies. MJW is a California-based company and feels the injury in California. Plus, the suits and properties MJW was denied coverage for were all in California. And, while this is not technically an insurance contract claim, it is closely tied to the insurance contract with an intended place of performance at the time of contracting in California.[32] It is not clear from the third-party complaint where the conduct causing the injury occurred. On the other hand, SentryWest is a Utah-based company and feels damages from its potential liability in Utah.[33] But only SentryWest's location points

---

[28] *Waddoups*, 2002 UT 69, ¶ 16.
[29] *Id.* ¶ 18 (quoting Restatement (Second) Conflict of Laws § 145(2) (1971)).
[30] Reply 6–8.
[31] *See, e.g.*, *Shields v. Consol. Rail Corp.*, 810 F.2d 397 (3d Cir. 1987) (making a choice of law decision for an indemnification claim based on where the injury to the Plaintiff occurred, even when the third-party plaintiff and third-party defendants were both citizens of a different state. The court was applying Pennsylvania law, but Pennsylvania law also follows the Second Restatement's most significant relationship test like Utah.).
[32] *See One Beacon American Ins. Co. v. Huntsman Polymers Corp.* 2012 UT App 100, ¶ 29–30 (explaining that the place of performance of an insurance contract is the location where the insured is paid, and ultimately finding the most significant relationship existed at "the intended place of performance at the time of contracting" and "the location of the insured risk.").
[33] The other parties, CRC and NACIC, are not located in either Utah or California.

towards Utah law applying. Ultimately, CRC's alleged negligence has a more significant relationship with California, where MJW would have been paid under the insurance contract if properly acquired by CRC and the other Defendants, than with Utah. Thus, the court will apply California law at this stage.

### II.  Economic Loss Rule

Under California Law, "[t]he economic loss rule is a device, among others, that courts have developed to address and protect the often elusive boundary line between tort and contract law."[34] "[T]he economic loss rule was developed to ensure that the law of contract would not 'drown in a sea of tort.'"[35] "The rule itself is deceptively easy to state: In general, there is no recovery in tort for *negligently* inflicted 'purely economic losses,' meaning financial harm unaccompanied by physical or property damage."[36] Or in other words, "the economic loss rule requires a contractual party to recover in contract for purely economic loss due to disappointed expectations, unless the party can demonstrate harm above and beyond a broken contractual promise."[37]

"[U]nder the economic loss rule, tort recovery for breach of a contract duty is generally barred unless two conditions are satisfied": First, the plaintiff must demonstrate that "the defendant's injury-causing conduct violated a duty that is independent of the duties and rights assumed by the parties when they entered the contract"; and second, "the defendant's conduct

---

[34] *Rattagan v. Uber Techs., Inc.*, 553 P.3d 1213, 1223 (Cal. 2024).
[35] *Id.* at 1223–24 (quoting *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866 (1986)).
[36] *Id.* at 1224 (quoting *Sheen v. Wells Fargo Bank, N.A.*, 505 P.3d 625, 632 (Cal. 2022)).
[37] *Id.* (quoting *Robinson Helicopter Co., Inc v. Dana Corp.*, 102 P.3d 268, 272 (Cal. 2004) (cleaned up).

must have caused injury to persons or property that was not reasonably contemplated by the parties when the contract was formed."[38]

Here, SentryWest concedes that the "second element [is] admittedly not satisfied . . . ."[39] But, inexplicably, SentryWest argues that this element is somehow a "fatal flaw with CRC's argument that the economic loss rule applies."[40] SentryWest admits that "[r]eading the plain language of that clause, the parties agreed that each would hold the other harmless for any demand or claim arising from negligence they committed."[41] As SentryWest further explains "[s]imply put, SentryWest and CRC contractually agreed to hold each other harmless for anything – including economic losses – sustained by the other as a result of their own negligence."[42] SentryWest admits that the parties *contractually* agreed to hold each other harmless—and thus, SentryWest cannot recover *in tort* for a breach of a contractual duty when they have not satisfied the exceptions to the economic loss rule. Therefore, under California law, SentryWest's tort claim for equitable indemnity and contribution is barred by the economic loss rule.

The result is the same under Utah law. "In general, the economic loss rule places limits on tort claims for purely economic losses."[43] "It is a 'judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from

---

[38] *Id.*
[39] Opp. 7.
[40] *Id*.
[41] *Id.*
[42] *Id.*
[43] *Hayes v. Intermountain Geoenv't Sercs.*, 2021 UT 62, ¶ 16.

physical harm by imposing a duty of reasonable care.'"[44] "The economic loss rule prohibits the recovery of economic losses unless a plaintiff has suffered physical property damage or bodily injury."[45] Here, SentryWest has not suffered physical property damage or bodily injury.

That said, SentryWest argues that they fit within an exception to the economic loss rule. This exception allows recovery for economic losses when "the defendant owes the plaintiff a duty independent of any contractual relationship between the parties."[46] "If [the court] find[s] that an independent duty exists under the law, 'the economic loss rule does not bar a tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.'"[47] Thus, "claims arising under a fiduciary duty . . . lie outside the scope of the economic loss rule."[48]

However, SentryWest does not point to any Utah law which establishes that CRC owed a fiduciary or other independent duty to MJW. Instead, it simply states that SentryWest's claim "is premised on CRC's professional negligence."

The court could stop there;[49] but even considering the issue, Utah law imposes no independent duty on CRC to procure MJW's insurance. Under Utah law, "[a] duty to procure insurance may arise when an agent accepts an application; makes a bare acknowledgment of a

---

[44] *Id.*
[45] *Gables at Sterling Vill. Homeowners Ass'n, Inc. v. Castlewood-Sterling Vill. I, LLC*, 2018 UT 04, ¶ 48.
[46] *Hayes*, 2021 UT 62, ¶ 16.
[47] *Gables*, 2018 UT 04, ¶ 48 (quoting *Davencourt at Pilgrims Landing Homeowners Association v. Davencourt at Pilgrims Landing, LLC*, 2009 UT 65, ¶ 27).
[48] *Davencourt*, 2009 UT 65, ¶ 38.
[49] Opp. 6; *See United States v. Vontress*, No. 22-3119, 2024 WL 5074634, at *4 (10th Cir. 2024) ("[Plaintiff's] cursory statements, without supporting analysis and case law, fail to constitute the kind of briefing needed for us to address his arguments. We decline to make his arguments for him.") (internal citations omitted); *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000); *Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992) ("[T]he court should not assume the role of advocate.").

8

contract covering a specific kind of casualty; lulls the other party into believing a contract has been effected through promises; and has taken care of the insured's needs without consultation in the past."[50] However, when there is no "direct contact[,] . . . no special relationship could exist that would impose a duty."[51] Here, CRC did not have "any direct contact with [MJW,]" and so "no special relationship could exist that would impose a duty on them."[52] Only SentryWest could be subject to these duties, if any, as it was the one with direct contact with MJW. Therefore, under Utah law, SentryWest's tort claim for equitable indemnity and contribution is also barred by the economic loss rule.

## ORDER

Defendant CRC's Motion to Dismiss Third-Party Complaint[53] is GRANTED. All claims against CRC Insurance Services, LLC are dismissed.

Signed January 12, 2026.

BY THE COURT

David Barlow
United States District Judge

---

[50] *Harris v. Albrecht*, 2004 UT 13, ¶ 30.
[51] *Asael Farr & Sons Co. v. Truck Ins. Exch.*, 2008 UT App 315, ¶ 41.
[52] *Id.*
[53] ECF No. 49.